# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-06352 MMM (RCx) | Date | January 21, 2011 |
|---|---|---|---|

| Title | *Andrade, et al. v. American Apparel, Inc., et al.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW |
|---|---|

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order Granting Proposed Lead Plaintiff Robert England's Request for Discovery[33]; Continuing Motions for Appointment as Lead Plaintiff[19][21]**

This is a putative securities fraud class action brought pursuant to the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Reform Act"). Two competing motions for appointment of lead plaintiff and approval of lead counsel are pending before the court. On October 25, 2010, Charles Rendelman, an individual investor, filed a motion for appointment as lead plaintiff and for consolidation of this action with several related cases.[1] That same day, Robert England filed a motion for appointment as lead plaintiff and for consolidation of this action with the related cases.[2] The cases were consolidated on December 3, 2010, with the result that the issue remaining for decision is appointment of a lead plaintiff and approval of that plaintiff's selection of lead counsel. Both plaintiffs contend they are best suited to represent the class in this matter.

---

[1]Motion for Appointment of Counsel and for Appointment as Lead Plaintiff Filed by Movant Charles Rendelman ("Rendelman Motion"), Docket No. 19 (Oct. 25, 2010).

[2]Motion for Appointment of Counsel and for Appointment as Lead Plaintiff Filed by Proposed Lead Plaintiff Robert England ("England motion"), Docket No. 21 (Oct. 25, 2010).

## I. FACTUAL BACKGROUND

Both plaintiffs seek to represent a class of all persons who purchased American Apparel common stock between December 20, 2006 and August 16, 2010.[3] The relevant facts are as follows.

American Apparel describes itself as a vertically integrated manufacturer, distributor, and retailer of branded fashion basic apparel based in Los Angeles, California.[4] The company operates more than 280 retail stores throughout the world, and maintains a wholesale business that supplies t-shirts and other casual wear to distributors and screen printers.[5] Defendant Dov Charney founded American Apparel in 1989.[6]

On December 19, 2006, American Apparel announced a reverse merger with Endeavor Acquisition Corporation.[7] In the announcement, it praised its employees as crucial to the company's success.[8] Plaintiffs contend this was the first of many false and material misrepresentations about the company's hiring practices and the effect such hiring practices had on American Apparel's financial performance made during the class period.[9] Plaintiffs assert that, following the merger, defendants led investors to believe that the company had made "diligent efforts" to comply with labor and employment regulations, when in fact they had not done so.[10] In July 2009, American Apparel revealed that United States Immigration and Customs Enforcement (ICE) was investigating the company's compliance with U.S. immigration laws.[11] Despite the investigation, plaintiffs contend, defendants again assured investors that the company was making "diligent efforts" to comply with all employment and labor regulations, and that the investigation would not have a material impact on American Apparel's financial results or earnings.[12]

---

[3]Complaint, Docket No. 1 (Aug. 25, 2010), ¶ 2.

[4]Rendelman Motion at 3; England Motion at 2.

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Rendelman Motion at 3; England Motion at 3.

[11]*Id.*

[12]*Id.*

On May 19, 2010, the company announced that gross margins for the first quarter of 2010 were impaired by reduced labor efficiency at the company's production facilities, and that this impairment would lead to a reduction in net income of $4.4 million.[13] The company projected that this reduced efficiency could continue through 2011.[14] It also revealed that 1,500 manufacturing employees had been dismissed in the second half of 2009 as a result of the ICE inspection.[15] Following this revelation, the company's stock declined by more than forty percent.[16]

On July 28, 2010, American Apparel revealed that, effective July 22, 2010, Deloitte and Touche, LLP (Deloitte) had resigned as its independent public accountant.[17] Subsequently, on August 17, 2010, the company announced that despite quarterly net sales of $132 million to $143 million, it would report a net loss of $5 to $7 million for the quarter.[18] A significant factor contributing to the net loss, plaintiffs contend, was "lower labor efficiency at the company's production facilities" that "was primarily a result of the hiring of over 1,600 net new manufacturing workers during the second quarter of 2010."[19] Additionally, the company revealed that it might not have sufficient liquidity to sustain operations for the next twelve months and issued a going concern warning.[20] Following these revelations, American Apparel's stock declined more than twenty-five percent from its close on August 16, 2010 to its close on August 17, 2010 at $1.03 per share.[21] As the market continued to react to the disclosures, the company's stock fell an additional twenty-one percent to close at $0.81 per share on August 18, 2010.[22]

The complaint states three causes of action: (1) violation of § 10(b) of the Securities and

---

[13]*Id.*

[14]Rendelman Motion at 4; England Motion at 3.

[15]Rendelman Motion at 3-4; England Motion at 3.

[16]Rendelman Motion at 4; England Motion at 3.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

Exchange Act of 1934 and Rule 10b-5,[23] (2) violation of § 20(a) of the Securities and Exchange Act,[24] and (3) violation of § 14(a) of the Securities and Exchange Act.[25]

Both Rendelman and England contend that they sustained significant losses as a result of American Apparel's false representations, and both assert that they are the most adequate plaintiff to represent the proposed class.[26] In his opposition to Rendelman's motion for appointment, England contends that Rendelman will not fairly and adequately protect the interests of the class for several reasons related to his position as President of a clothing company named Long Ramp.[27] England asserts that a former Long Ramp employee filed suit against Rendelman, alleging accounting manipulations "similar to the conduct defendants are accused of here."[28] In addition, Long Ramp is now in bankruptcy proceedings, and American Apparel was at one point identified on Long Ramp's creditor matrix, indicating that a business relationship may have existed between the entities.[29] Finally, England contends that the District of Columbia Office of Tax and Revenue audited Long Ramp in connection with its bankruptcy proceeding, and determined that Long Ramp had underreported corporate franchise taxes by more than $150,000 during the class period.[30] For these reasons, England argues that Rendelman is not fit to serve as a fiduciary for the proposed class.[31]

On January 14, 2011, England filed a request to cross-examine Rendelman, or in the alternative, to take Rendelman's deposition prior to any hearing on the motions for appointment as lead plaintiff.[32] Rendelman has opposed England's request.[33]

## II. DISCUSSION

[23]Complaint, ¶¶ 96-100.

[24]*Id.*, ¶¶ 101-102.

[25]*Id.*, ¶¶ 103-109.

[26]Rendelman Motion at 7; England Motion at 5.

[27]Opposition to Motion for Appointment of Counsel and for Appointment of Lead Plaintiff ("England Opposition"), Docket No. 26 (Jan. 10, 2011).

[28]*Id.* at 1.

[29]*Id.* at 1-2.

[30]*Id.* at 6.

[31]*Id.* at 6-8.

[32]Notice of Request to Cross-Examine Charles Rendelman, Docket No. 33 (Jan. 14, 2011).

[33]Opposition to Robert England's Request for Discovery, Docket No. 34 (Jan. 18, 2011).

"[E]xpedited discovery related to whether [a prospective lead plaintiff] is the most adequate plaintiff . . . is permitted by 15 U.S.C. § 78u-4(a)(3)(B)(iv) if the plaintiff demonstrates 'a reasonable basis for a finding that [such] plaintiff is incapable of adequately representing the class.'" *Knisley v. Network Associates, Inc.*, 77 F.Supp.2d 1111, 1112 (N.D. Cal. 1999). See also *Hodges v. Immersion Corp.*, Nos. C-09-4073 MMC, C-09-4118 MMC, C-09-4561 MMC, C-09-4744 MMC, 2009 WL 5125917, *4 (N.D. Cal. Dec. 21, 2009) ("[D]iscovery related to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class," citing 15 U.S.C. § 78u-4 (a) (3)(B)(iv)); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, *2 (N.D. Cal. Dec. 14, 2001) ("At this stage in the litigation. . .discovery is permitted only if 'the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class,'" citing 15 U.S.C. § 78u-4(a)(3)(B)(iv)).

"On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Securities Litigation*, No. 03 CV 1721JM(POR), 2004 WL 5159061, *7 (S.D. Cal. Jan. 5, 2004) (citing *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (finding that two public citations for violation of the SEC's and NASD's rules rendered a proposed lead plaintiff inadequate given concerns about possible defenses and his moral character); *In re Network Associates, Inc. Securities Litigation*, 76 F.Supp.2d 1017, 1029 (N.D. Cal. 1999) (holding that a presumptive lead plaintiff was inadequate due to an unrelated fraud investigation)). See also *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) ("CalPERS is correct that honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class," citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998), and *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983)).

Because England has presented a reasonable basis for a finding that Rendelman is not an adequate plaintiff, early discovery regarding Rendelman's ability to serve as a fiduciary for the proposed class is properly authorized. Specifically, if England's allegations regarding misconduct and tax underreporting[34] are indeed accurate, Rendelman's fitness could well be called into question.

---

[34]See England Opposition, Exh. 4 (Declaration of Mike Rosella), ¶¶ 3, 5-6, 8 ("In May 2005, I joined Long Ramp, Inc. . . as a consultant to assume the responsibilities of the Company's departing Controller. . . Prior to my departure from Long Ramp in April 2006, I was in a position to observe and object to the manner in which Mr. Rendelman and co-owner Stuart Ezrailson operated the Company contrary to generally accepted accounting principles and the Internal Revenue Code. . . . During my tenure at Long Ramp, Messrs. Rendelman and Ezrailson directed me to manipulate Long Ramp's financial statements, misrepresent its cash position and modify vendor payments schedules in order to mislead Long Ramp's creditors and potential investors as to the Company's overall financial position. Additionally, Rendelman directed me to have his personal expenses including travel and personal income tax payment, paid for by and expensed to Long Ramp. . ."); see also *id*, Exh. 3 (District of Columbia's Opposition to Debtor's Objection to Allowance of Claim), ¶ 3 ("OTR undertook an audit of Debtor beginning in March 2010 because it received information that indicated

See *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, *5 (N.D. Cal. Sept. 20, 2010) (granting "the other putative lead plaintiffs . . . sixty (60) days to conduct discovery directed solely at whether Catoosa is a suitable plaintiff to lead the class of investors in this case" because "the court . . . harbor[ed] some concerns about Catoosa's transparency and its trading practices," and because "Catoosa [was] a hedge fund, and some, but not all, hedge funds are known for engaging in speculative, risky and atypical investments").

## III. CONCLUSION

For the reasons stated, the court grant's England's request for discovery. England may depose Rendelman with respect to his suiltability to serve as lead plaintiff in this case. The court continues the hearing on Rendelman's and England's motions for appointment as lead plaintiff to **March 7, 2011 at 10:00 a.m.** Each party may submit **one** additional brief on or before **February 14, 2011.**

---

Debtor allegedly may not have fully complied with the tax laws of the District and reported that it owed corporate franchise taxes. . . . From the audit, OTR determined that Debtor had under-reported its corporate franchise tax. . .").