1  Chet A. Kronenberg (State Bar No. 222335)
   ckronenberg@stblaw.com
2  Michael G. Freedman (State Bar No. 264041)
   mfreedman@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   1999 Avenue of the Stars, 29th Floor
4  Los Angeles, California 90067
   Telephone: (310) 407-7500
5  Facsimile: (310) 407-7502

6  Attorneys for Defendants
   LION CAPITAL LLP and LION
7  CAPITAL (AMERICAS) INC.

8

9              UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                     WESTERN DIVISION

12

13 | IN RE AMERICAN APPAREL, INC. ) Case No. CV-10-6352 MMM (JCGx)
   | SHAREHOLDER LITIGATION       )
14 |                              ) **LION CAPITAL LLP AND LION**
   |                              ) **CAPITAL (AMERICAS) INC.'S**
15 |                              ) **NOTICE OF MOTION AND MOTION**
   |                              ) **TO DISMISS FIRST AMENDED**
16 | This Document Relates To:    ) **CLASS ACTION COMPLAINT FOR**
   | ALL ACTIONS                  ) **VIOLATION OF FEDERAL**
17 |                              ) **SECURITIES LAWS**
   |                              )
18 |                              ) Hon. Margaret M. Morrow
   |                              )
19 |                              ) Courtroom: 780
   |                              ) Date: May 21, 2012
20 |                              ) Time: 10:00 a.m.
   |                              )
21 |                              ) [Filed concurrently herewith: Request for
   |                              ) Judicial Notice; [Proposed] Order
22 |                              ) Granting Request for Judicial Notice;
   |                              ) [Proposed] Order Granting Motion to
23 |                              ) Dismiss]

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 21, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard, Lion Capital LLP and Lion Capital (Americas) Inc. (collectively, "Lion Capital") will move this Court for an order granting Lion Capital's motion to dismiss the First Amended Class Action Complaint for Violation of Federal Securities Laws pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Lion Capital also hereby joins in the motion to dismiss by defendant American Apparel, Inc.

This Motion is based on the concurrently filed Memorandum of Points and Authorities and Request for Judicial Notice; Defendant American Apparel, Inc's Motion to Dismiss the First Amended Class Action Complaint; the pleadings, records and papers on file with the Court; and on any such further or other matters the Court deems proper at the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 22, 2012.

Dated: March 30, 2012

SIMPSON THACHER & BARTLETT LLP

By  */s/ Chet A. Kronenberg*
Chet A. Kronenberg
Michael G. Freedman

Attorneys for Defendants
LION CAPITAL LLP and LION CAPITAL (AMERICAS) INC.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL ALLEGATIONS .................................................................................... 3

    A.    Lion Capital's Loan To American Apparel ............................................. 3

    B.    Plaintiff's Allegations Against Lion Capital ........................................... 4

LEGAL STANDARD ................................................................................................ 5

ARGUMENT .............................................................................................................. 5

    A.    Plaintiff Does Not Allege A Primary Violation Of The Securities Laws By American Apparel With Respect To The 2009 Annual Report ........................................................................................................ 6

    B.    Plaintiff Does Not Allege That Lion Capital Exercised Day-To-Day Operational Control Over American Apparel Such That It Had The Power To Dictate American Apparel's Conduct Or Operations. ................................................................................................ 9

    C.    Plaintiff's Reliance on *Batwin* and *In re Surebeam Corp.* Is Misplaced ................................................................................................ 12

    D.    Leave To Amend Should Be Denied ..................................................... 14

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Batwin v. Occam Networks, Inc.*,
  2008 WL 2676364 (C.D. Cal. July 1, 2008) .............................................. 12, 13

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ........................................................................................ 5

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates*,
  748 F. Supp. 2d 1246 (W.D.Wash. 2010) ........................................................ 12

*Cole v. Sunnyvale*,
  2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ........................................................ 4

*Colon v. Wilson*,
  2011 WL 117141 (N.D. Cal. Jan. 6, 2011) ......................................................... 8

*Fanni v. Northrop Grumman Corp.*,
  2000 U.S. Dist. LEXIS 21626 (C.D. Cal. Apr. 10, 2000) .................................. 3

*Fink v. Weill*,
  2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) .................................................. 3

*Fouad v. Isilon Sys., Inc.*,
  2008 WL 4512397 (W.D. Wash. Dec. 29, 2008) ............................................ 14

*In re Gupta Corp. Sec. Litig.*,
  900 F. Supp. 1217 (N.D. Cal. 1994) ................................................ 9, 10, 11, 14

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................... 3, 6, 11

*In re Infonet Servs. Corp. Sec. Litig.*,
  310 F. Supp. 2d 1080 (C.D. Cal. 2003) .............................................................. 8

*In re Lernout & Hauspie Sec. Litig.*,
  286 B.R. 33 (D. Mass. 2002) ............................................................................ 10

*In re McKesson HBOC Secs. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................. 9

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  2000 WL 1727405 (N.D. Cal. 2000) ................................................................ 11

*In re Surebeam Corp. Sec. Litig.*,
  2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ............................................... 12, 13

*In re Tyco Int'l, Ltd.*,
  2007 WL 1687775 (D. N.H. June 11, 2007) .................................................... 10

*In re Valence Tech. Sec. Litig.*,
  1996 WL 225010 (N.D. Cal. Apr. 30, 1996) .................................................... 10

*Jack Rowe Assocs., Inc. v. Sanyo Elec., Inc.*,
  1989 WL 1160096 (9th Cir. Oct. 16, 1989) ..................................................... 14

*Lilley v. Charren*,
  936 F. Supp. 708 (N.D. Cal. 1996) .................................................................... 9

*Lopes v. Vieira*,
  2010 WL 3853287 (E.D. Cal. Sept. 30, 2010) ................................................. 14

*Metge v. Baehler*,
  762 F.2d 621 (8th Cir. 1985) ............................................................................ 13

*O'Sullivan v. Trident Microsystems*,
  1994 WL 124453 (N.D. Cal. Jan. 31, 1994) ..................................................... 14

*Paracor Fin., Inc. v. General Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ...................................................................... 12, 13

*Patel v. Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) .................................................................... 3, 8

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
  940 F. Supp. 1101 (W.D. Mich. 1996) ............................................................. 10

*Schlifke v. Seafirst Corp.*,
  866 F.2d 935, 949 (7th Cir. 1989) .................................................................... 13

*Slack v. Suburban Propane Partners, L.P.*,
  2010 WL 5392845 (D.N.J. Dec. 22, 2010) ........................................................ 8

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Lion Capital LLP and Lion Capital (Americas) Inc. (collectively, "Lion Capital"), by and through their attorneys, respectfully submit this memorandum of points and authorities in support of Lion Capital's motion to dismiss the First Amended Class Action Complaint for Violation of Federal Securities Laws (the "First Amended Complaint" or "FAC").

# PRELIMINARY STATEMENT

By virtue of the fact that Lion Capital loaned American Apparel $80 million in March 2009 and had two representatives on American Apparel's nine-member board, Plaintiff contends that Lion Capital can be held liable as a control person of American Apparel, Inc. ("American Apparel").

In its January 13, 2012 Order Granting Defendants' Motions to Dismiss (the "January 13, 2012 Order"), the Court stated that "given its dismissal of the primary violation claims, the court need not assess the adequacy of plaintiffs' allegations against Lion Capital at this time."  1/13/12 Order at 67 n.222.  The Court noted, however, that "[s]ince Lion Capital's alleged control of American Apparel began in March 2009—in the middle of the class period—it can be held liable only for the misrepresentations and omissions made after that time." *Id.* at 67-68 n.222. Although the Court "direct[ed] plaintiff[] to amend this aspect of [his] claim against Lion Capital in any amended complaint" (*id.* at 68 n.222), Plaintiff does not specify the misrepresentations or omissions for which Plaintiff seeks to hold Lion Capital liable as a control person.  Rather, Plaintiff just adds one sentence stating that Lion Capital can face liability only for the post-March 2009 time period.  FAC ¶ 3.

It appears that Plaintiff seeks to hold Lion Capital liable solely with respect to American Apparel's 2009 Annual Report filed with the SEC on March 31, 2010.  *See* FAC ¶¶ 161, 207.  Plaintiff alleges that the 2009 Annual Report was false, citing Deloitte's belief that management withheld from Deloitte the February 2010 monthly financial statements until after the filing of the 2009 Annual Report.

*Id.* ¶ 166. However, Plaintiff's allegations regarding the 2009 Annual Report and Deloitte are identical to the allegations in his prior complaint. With respect to those allegations, the Court held that Plaintiff failed to plead with particularity that the 2009 Annual Report was false or that American Apparel acted with scienter. *See* 1/13/12 Order at 47, 61-63. No different result is mandated now. Without a primary securities law violation, Lion Capital cannot be liable as a control person.

Furthermore, even if the 2009 Annual Report were false and American Apparel acted with scienter, Plaintiff fails to plead that Lion Capital exercised the requisite power or control over American Apparel sufficient to state a control person claim against Lion Capital. Specifically, Plaintiff does not allege Lion Capital exercised day-to-day operational control over American Apparel such that it had the power to dictate American Apparel's conduct or operations. The fact that Lion Capital appointed two members of American Apparel's nine member board is insufficient as a matter of law to establish that Lion Capital had day-to-day operational control over American Apparel. In addition, neither of Lion Capital's board designees sat on American Apparel's audit committee—the board committee responsible for American Apparel's financial reporting and interactions with Deloitte. Accordingly, the two Lion Capital designees could not have exercised day-to-day operational control over the financial reporting contained in American Apparel's 2009 Annual Report.

Finally, Plaintiff's control person claim against Lion Capital is implausible. Plaintiff alleges that American Apparel withheld negative financial information from the market in its 2009 Annual Report so that American Apparel could mislead lenders such as Lion Capital, with whom (according to the First Amended Complaint) American Apparel was renegotiating its loan. FAC ¶¶ 52, 162, 164. Because Lion Capital would not want to defraud itself, Plaintiff's control person claim against Lion Capital makes no sense.

# FACTUAL ALLEGATIONS

## A. Lion Capital's Loan To American Apparel

Lion Capital is one of American Apparel's lenders. FAC ¶ 161. On or about March 16, 2009, approximately fifteen months after the alleged class period commenced, American Apparel announced that it had entered into a private financing agreement with Lion Capital whereby Lion Capital "loaned" American Apparel $80 million. *Id.* ¶¶ 161-62. On October 1, 2010, American Apparel restructured its credit agreement with Lion Capital. *Id.* ¶ 162. According to the Complaint, Lion Capital's loan saved American Apparel from bankruptcy. *Id.* ¶ 163.[1]

Plaintiff alleges that the financing agreement between American Apparel and Lion Capital gave Lion Capital the right to designate two individuals to American Apparel's board of directors. *Id.* ¶ 161. The two directors designated by Lion Capital joined American Apparel's board on October 28, 2009. At that time, American Apparel had nine directors in total. *See* Lion Capital's Request for Judicial Notice ("RJN"), Ex. A (2009 Annual Report) at 106, 115.[2] In a press

---

[1] Plaintiff names two Lion Capital entities as defendants in this lawsuit. Lion Capital LLP was the party to the initial financing agreement with American Apparel. On or about March 27, 2009, Lion Capital LLP assigned certain rights under that agreement to its affiliate, Lion Capital (Americas) Inc.

[2] Plaintiff refers to American Apparel's annual report, and relies upon it, in its complaint. *See* Compl. ¶¶ 42, 69, 71, 161, 192, 207. Accordingly, the 2009 annual report has been incorporated by reference. *See Patel v. Parnes*, 253 F.R.D. 531, 545 (C.D. Cal. 2008) (Morrow, J.) ("Courts may consider securities offering and corporate disclosure documents referenced in a complaint."). In addition, the date when the two Lion Capital designees were appointed to American Apparel's board, and the total number of Lion Capital directors at the time of such appointment, are facts capable of accurate and ready determination. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1150 n. 2 (C.D. Cal. 2007) (granting request for judicial notice of SEC filings referenced in complaint); *Fanni v. Northrop Grumman Corp.*, No. 98-cv-6578, 2000 WL 35905106, at *7 (C.D. Cal. Apr. 10, 2000) (taking judicial notice of proxy statement and relying on proxy statement for dates defendant served on board of directors); *Fink v. Weill*, No. 02-cv-10250, 2005 WL 2298224, at *5 n.9 (S.D.N.Y. Sept. 19, 2005) (taking judicial notice of composition of board of directors).

release dated April 1, 2011, American Apparel announced that the Lion Capital designees resigned from American Apparel's board to eliminate "conflicts of interest." FAC ¶ 60. On April 21, 2011, a separate group of investors loaned $45 million to American Apparel. *Id.* ¶ 162 n.16.

In connection with its loan, Plaintiff also alleges that Lion Capital received "warrants" for American Apparel stock. *Id.* ¶¶ 161, 209. These warrants gave Lion Capital the ***option*** to acquire American Apparel common stock at an initial exercise price of $2.00 per share during a specific time period which, "if exercised" by Lion Capital, would have given Lion Capital an approximately 18% ownership interest in American Apparel. Compl. ¶ 164; FAC ¶ 209.[3] Lion Capital never exercised its option to acquire an ownership interest in American Apparel.

## B. Plaintiff's Allegations Against Lion Capital

Plaintiff's claims are brought on behalf of a purported class of "all persons who purchased . . . American Apparel common stock between November 28, 2007 and August 17, 2010." FAC ¶ 2. Because Lion Capital did not loan American Apparel money until March 13, 2009, Plaintiff acknowledges that Lion Capital cannot face liability as a control person for any misstatements or omissions made prior thereto. *Id.* ¶ 3. And because Lion Capital's two designees did not join American Apparel's board until October 28, 2009, *see* RJN, Ex. A (2009 Annual Report) at 106, the actual control person window for Lion Capital is even narrower.[4]

---

[3] The Court may refer to allegations in an earlier complaint in assessing a motion to dismiss. *See Cole v. Sunnyvale*, No. 08-cv-05017, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief.").

[4] Most of Plaintiff's allegations concern statements made by American Apparel and/or its officers ***before*** Lion Capital made its loan to American Apparel in March 2009. *See, e.g., id.* ¶ 114 (challenging statement in November 2007 Proxy that "American Apparel's workers are documented immigrants, authorized to work in the United States"); ¶ 119 (challenging statement in 2007 Annual Report that the "Company makes diligent efforts to comply with

With regard to Lion Capital, Plaintiff alleges that American Apparel's "2009 Annual Report" was "false," and that it was signed by Lion Capital's two designees on American Apparel's board. *Id.* ¶¶ 161; 207. (All nine American Apparel directors are signatories to the 2009 Annual Report. RJN, Ex. A (2009 Annual Report) at 115.) To support its claim that the 2009 Annual Report was "false," Plaintiff relies on Deloitte's belief that management withheld from Deloitte the February 2010 monthly financial statements until after the filing of the 2009 Annual Report. FAC ¶ 166. Plaintiff alleges that Lion Capital may face liability for any misstatements in the 2009 Annual Report because Lion Capital purportedly acted as a "controlling person" of American Apparel. *Id.* ¶ 207.

## LEGAL STANDARD

Lion Capital brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of any count or cause of action that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain enough facts to state a claim that is not merely "conceivable" but "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

## ARGUMENT

The Complaint seeks to hold Lion Capital liable as a "control person" of American Apparel under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). FAC ¶¶ 207, 209. In order to plead control person liability, "a plaintiff must allege (1) a primary violation of the federal securities laws; <u>and</u> (2) that the defendant exercised actual power or control over the primary violator."

---

all employment and labor regulations, including immigration laws"); ¶ 49 (challenging statement made on May 13, 2008 by Defendant Dov Charney that American Apparel "want[s] to pursue a strict corporate orthodoxy as far as financial accounting issues").

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (emphasis added).  Here, Plaintiff fails to satisfy either element.

### A. Plaintiff Does Not Allege A Primary Violation Of The Securities Laws By American Apparel With Respect To The 2009 Annual Report

Plaintiff contends that the 2009 Annual Report was false because, when Deloitte resigned as American Apparel's auditor, Deloitte stated that it was "no longer willing to rely on management's representations due to Deloitte's belief that management withheld from Deloitte the February 2010 monthly financial statements until after the filing of the 2009 Annual Report and made related misrepresentations." FAC ¶ 166.  However, as American Apparel has pointed out previously, Deloitte did not state that American Apparel "knowingly concealed" information (*id.* ¶ 169), nor do they characterize the February financials as "material adverse financial information." *Id.*  The words "knowingly" and "material," as well as "deliberately withheld" (*id.* ¶¶ 52, 164, 169) have been inserted liberally by Plaintiff and his counsel after the fact.  Moreover, when American Apparel's new independent auditor re-audited American Apparel's 2009 financial statements, it did not result in a restatement of any kind.  *See* Request for Judicial Notice in Support of American Apparel's Motion to Dismiss, Docket No. 74, Ex. 24 (2010 Annual Report) at 6.

The Court addressed the sufficiency of Plaintiff's allegations regarding Deloitte in connection with American Apparel's previous motion to dismiss.  The Court held that Plaintiff failed to adequately plead that the 2009 Annual Report was false or that American Apparel acted with the requisite scienter:

> [T]he complaint fails to allege with sufficient particularity what aspects of American Apparel's financial statements were false, and how those misstatements were linked to management's alleged misrepresentation or concealment of information from Deloitte. . . . Without allegations detailing the inaccuracies in the financial statements, the types of information that defendants purportedly withheld, and the knowledge or participation of the individual defendants in the withholding, plaintiffs fail to plead scienter.

*See* 1/13/12 Order at 47, 61-62.[5]

Plaintiff does not allege anything about the 2009 Annual Report and Deloitte's resignation in his First Amended Complaint that was not previously contained in the original complaint. Plaintiff merely changed the order of his allegations. Below is a comparison of the relevant allegations in Paragraphs 166 and 169 of the First Amended Complaint versus Paragraphs 126, 127 and 124 of the Original Complaint. As the Court can see, the changes are immaterial:

> ~~Then, on~~On July 28, 2010, the Company revealed that, effective July 22, 2010, Deloitte had resigned as the Company's independent public accountant~~. The Form 8-K further revealed~~, stating that "Deloitte advised the Company that certain information has come to Deloitte's attention, that if further investigated may materially impact the reliability of either its previously issued audit report or the underlying consolidated financial statements for the year ended December 31, 2009 included in the Company's 2009 Form 10-K." In response to this news, American Apparel's stock declined 14.36%, to $1.55, on heavy trading. Deloitte resigned because, in its own words, it was "***no longer willing to rely on management's representations due to Deloitte's belief that management withheld*** from Deloitte the February 2010 monthly financial statements until after the filing of the 2009 Annual Report and made related misrepresentations."
>
> Facts later revealed by Deloitte ~~in conjunction with its abrupt resignation,~~ confirm that Defendants knowingly concealed material adverse financial information ~~not only from Deloitte but from American Apparel investors as well. In connection with Deloitte's resignation disclosures and the withdrawal of its March 2010 audit, American Apparel revealed the following~~:
>
>> Deloitte explained that its conclusion was based on ***the significance of the declines in operations and gross margin in the Company's February 2010 monthly financial statement, combined with the January 2010 monthly financial statements***, the Company's issuance of revised projections in early May 2010 which reflected a significant decrease in the Company's 2010 projections, and Deloitte's disagreement with the Company's conclusion that the results shown in the February 2010

---

[5] In his original complaint, Plaintiff alleged that the SEC had initiated a formal investigation surrounding Deloitte's resignation and the Company's financial reporting and internal controls. Compl. ¶¶ 12, 35, 130. Plaintiff omitted that allegation in his First Amended Complaint. As Plaintiff knows, but fails to disclose, by letter dated January 9, 2012, the SEC advised counsel for American Apparel that the SEC completed its investigation into Deloitte's resignation and did not intend to recommend any enforcement action. *See* RJN, Ex. B (January 9, 2012 SEC letter).

1
2
3
4
5
6
7

> monthly financial statements would not have required a revision to the Company's projections as of the date of the 10-K filing and the issuance of Deloitte's reports. Deloitte further indicated that their decision considered their inability to perform additional audit procedures, their resignation as registered public accountants ***and their professional judgment that they are no longer willing to rely on management's representations*** due to Deloitte's belief that management withheld from Deloitte the February 2010 monthly financial statements until after the filing of the 2009 10-K and made related misrepresentations.

8 *Comparing* FAC ¶¶ 166 and 169 to Compl. ¶¶ 126, 127 (relevant portion) and 124.

9 Plaintiff, in effect, is seeking reconsideration of the Court's prior ruling
10 in relation to the 2009 Annual Report based on the exact same allegations. This is
11 impermissible. *See Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010
12 WL 5392845, at *9 (D.N.J. Dec. 22, 2010) (holding that there was no need to
13 "revisit" its ruling on defendant's motion to dismiss when the claim in the amended
14 complaint "appear[ed] to be nearly the same—if not identical—to the version
15 contained in the" earlier complaint); *Colon v. Wilson*, No. 10-2362, 2011 WL
16 117141 (N.D. Cal. Jan. 6, 2011) (declining to revisit dismissal order because the
17 allegations in the proposed amended complaint were similar to those in the original
18 complaint).

19 Because Plaintiff does not adequately allege that American Apparel
20 committed a primary violation of the securities laws, Lion Capital cannot be liable
21 as a control person. *See Patel v. Parnes*, 253 F.R.D. 531, 561 (C.D. Cal. 2008)
22 (Morrow, J.) ("Because the court has dismissed plaintiffs' section 10(b) and Rule
23 10b-5 claims, there is no primary violation on which to predicate section 20(a)
24 liability."); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1105 n.24
25 (C.D. Cal. 2003) (same).

26
27
28

- 8 -
Recycled  Memorandum of Points and Authorities

### B. Plaintiff Does Not Allege That Lion Capital Exercised Day-To-Day Operational Control Over American Apparel Such That It Had The Power To Dictate American Apparel's Conduct Or Operations.

To state a control person claim, a plaintiff "must [] plead . . . that defendants exercised 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations.'" *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000). *See also Lilley v. Charren*, 936 F. Supp. 708, 716 (N.D. Cal. 1996) ("[P]laintiffs must allege facts showing that each defendant possessed the actual power to control the person primarily liable.").

Here, Plaintiff alleges that Lion Capital should be liable as a control person of American Apparel because the two Lion Capital designees on American Apparel's nine-member board "***signed the Company's 2009 Annual Report.***" FAC ¶ 207 (emphasis in original). In addition, Plaintiff alleges that Lion Capital stock warrants, "if exercised," would have given Lion Capital a minority ownership interest in American Apparel. *Id.* ¶ 209. These allegations are insufficient as a matter of law to establish that Lion Capital exercised the requisite day-to-day operational control over American Apparel.

*In re Gupta Corp. Securities Litigation*, 900 F. Supp. 1217 (N.D. Cal. 1994), is instructive. In *Gupta*, the plaintiffs brought a control person claim against Novell, Inc. ("Novell"), a corporate shareholder of Gupta Corporation ("Gupta"), and Kanwal Rekhi ("Rekhi"), an executive vice president and director of Novell, who sat on Gupta's board of directors. *Id.* at 1227. In support of their control person claims, plaintiffs alleged, among other things, that Rekhi "signed Gupta's 1993 Annual Report on Form 10-K." *Id.* at 1241. In addition, plaintiffs alleged that Novell "was able to control Gupta because Novell owned 8.7% of Gupta's stock." *Id.* at 1243. The court dismissed plaintiffs' control person claims, holding that: (i) the status of Rekhi as an outside director was insufficient to make him a control person absent "some showing of actual participation in the corporation's operation";

and (ii) "Novell's position as a minority shareholder of Gupta with an agent on the board does not establish control person liability." *Id.* Thus, the fact that Lion Capital's two designees on American Apparel's board, along with all of the other directors, signed the 2009 Annual Report is insufficient to plead control person liability.[6]

Dismissal of Plaintiff's control person claim also is warranted because Lion Capital's designees on American Apparel's board, Lyndon Lea and Neil Richardson, did not serve on American Apparel's audit committee—*i.e.*, the committee responsible for overseeing the content of financial documents and interacting with American Apparel's auditor. *See* RJN, Ex. C (October 15, 2010 Proxy Statement) at 20 and Ex. D (Audit Committee Charter).[7] Accordingly, Lion Capital's designees on American Apparel's board could not have had day-to-day operational control over financial reporting. For example, in *In re Lernout & Hauspie Securities Litigation*, 286 B.R. 33 (D. Mass. 2002), the court dismissed a control person claim against corporate directors who signed allegedly false SEC filings because, as here, they were not on the company's audit committee:

> The distinction lies in the director's ability to control the content of the financial documents. Where the director has some special status within

---

[6] Other courts also have dismissed control person claims premised on the fact that corporate directors signed challenged SEC filings. *See In re Valence Tech. Sec. Litig.*, No. 95-cv-20459, 1996 WL 225010, at *3 (N.D. Cal. Apr. 30, 1996) (dismissing control person claim because "at least three courts in this district have determined that merely signing a group published document does not make an outside director liable for the contents of that document"); *In re Tyco Int'l, Ltd.*, No. 04-cv-1336, 2007 WL 1687775, at *8 (D. N.H. June 11, 2007) (the bare assertion that a director and major shareholder "signed false SEC filings on Tyco's behalf" is insufficient to state a control person claim); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1134 (W.D. Mich. 1996) ("plaintiffs' attempts to link the outside directors to the alleged misstatements which appear in 'group published information' is unavailing").

[7] According to its Charter, American Apparel's audit committee is responsible for "the accounting, auditing, financial reporting, internal control and legal compliance functions of the Corporation and its subsidiaries" as well as "the audit efforts of the Corporation's independent auditors and internal auditors." RJN, Ex. D (Audit Committee Charter).

> the corporation, such as membership on an Audit Committee, and has the power to exercise content control over financial documents, the director's signature on the SEC filing might suffice for pleading purposes to establish the *exercise* of control over the contents of the financial statements. Where the defendant's status is merely that of outside director, however, the defendant's signature on the SEC filing does not necessarily constitute an exercise of any power or control over its contents.

*Id.* at 44 (dismissing control person claims against outside directors).

Nor does Plaintiff allege any acts demonstrating Lion Capital's "actual participation" in American Apparel's daily operations. *In re Gupta Corp.*, 900 F. Supp. at 1243. Because the First Amended Complaint does not "provide even one specific act of control exercised by" Lion Capital over American Apparel, Plaintiff's control person claim must be dismissed. *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. 99-cv-00109, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000). In fact, Plaintiff's boilerplate control person allegations in this case are virtually identical to those that this Court dismissed as insufficient in *Hansen*:

| **PLAINTIFF'S ALLEGATIONS** | **ALLEGATIONS IN *HANSEN* CASE** |
|---|---|
| By virtue of its high-level positions, and its ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements . . . Lion Capital had the power to influence and control . . . the decision-making of the Company, . . . ." FAC. ¶ 207. | By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness to the Company's operations and/or intimate knowledge of the false financial statements . . ., the Individual Defendants had the power to influence and control . . . the decision making of the Company. *Hansen*, 527 F. Supp. 2d at 1163. |

Finally, Plaintiff's control person claim is implausible. Plaintiff alleges that American Apparel withheld negative financial information in the 2009 Annual Report because it knew that if it disclosed evidence of its deteriorating financial condition, "additional financing and covenant waivers . . . would be far more difficult (and prohibitively expensive) to obtain." FAC ¶ 52; *see also id.* ¶ 164. But it was Lion Capital, as American Apparel's largest lender, with whom American Apparel was restructuring its credit agreement during this precise time period. *Id.*

1  ¶ 162.  Accordingly, Plaintiff's allegations would require the Court to believe that Lion Capital controlled American Apparel's decision to withhold information from Lion Capital in order to defraud Lion Capital.  Plaintiff's "control person" theory with respect to Lion Capital is implausible on its face.  *See Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1257 (W.D. Wash. 2010) (dismissing control person claim that offered "no factual content that would establish a plausible claim").

## C. Plaintiff's Reliance on *Batwin* and *In re Surebeam Corp.* Is Misplaced

In its opposition to Lion Capital's previous motion to dismiss, Plaintiff cited *Batwin v. Occam Networks, Inc.*, No. 07-cv-2750, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008), quoting *In re Surebeam Corp. Securities Litigation*, No. 03-cv-1721, 2005 WL 5036360, at *25 (S.D. Cal. Jan. 3, 2005), for the following proposition which Plaintiff believes supports its control person claim against Lion Capital:  "The traditional indicia of control are: having a prior lending relationship, owning stock in the target company, or having a seat on the board."  The *Surebeam* court cited *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996), for the language Plaintiff relies upon.  *Paracor*, however, strongly supports dismissal of Plaintiff's control person claim.

In *Paracor*, GE Capital financed the leveraged buyout of Casablanca Industries.  The transaction included the sale of high-yield debentures to investors in a private placement.  The investors contended that the issuer's private placement memorandum was materially misleading.  The investors argued that GE Capital was a "controlling person" of Casablanca.   In affirming the district court's summary judgment ruling in favor of GE Capital, the Ninth Circuit noted that "the Investors have not shown any of the traditional indicia of control of Casablanca in a broader sense.  GE Capital had no prior lending relationship with Casablanca.  GE Capital did not own stock in Casablanca prior to the closing and did not have a seat on its Board."  *Paracor*, 96 F.3d at 1162*.*  ***The Ninth Circuit then went on and stated*** that

"[o]ther courts addressing this situation have been reluctant to treat lenders as controlling persons of their borrowers" even when stock ownership and board representation are present. *Id.*[8] The Ninth Circuit concluded by stating that "GE Capital did not come close to having the type of leverage over Casablanca" that other courts "found to be inadequate to constitute control." *Id.* Thus, *Paracor* by no means stands for the proposition that a lender can be a control person merely because it has stock ownership and/or a seat on its borrower's board.

Finally, *Batwin* and *Surebeam* are distinguishable on their facts because they involved control person claims against **majority stockholders**. In *Surebeam*, a control person claim was stated against a parent company because the parent: (i) "owned 100% of [the subsidiary] at the time of the IPO and 84% of [the subsidiary] following the IPO"; and (ii) the parent had the power "to control the election of [the subsidiary's] directors" and to "control [the subsidiary's] management." *Surebeam*, 2005 WL 5036360, at *25. And in *Batwin*, the plaintiffs stated a control person claim against certain venture capital defendants because their "majority stake in [the company] enabled them to control decisions such as [the company's] auditing and revenue recognition practices . . . ." *Batwin*, 2008 WL 2676364, at *26. Here, by contrast, Lion Capital has no ownership interest in American Apparel, and its warrants, if Lion Capital was to exercise them, would only give Lion Capital an 18% ownership interest.

---

[8] The Ninth Circuit cited with approval *Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985), and *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 949 (7th Cir. 1989). In *Metge*, the Eighth Circuit held that a lending bank was not a controlling person of an investment company selling limited shares in real estate programs despite facts that the bank was the primary lender, held nearly 20% of the company's stock, held a proxy on a 51% block of the company's subsidiary, sent personnel to the company's board meetings and had certain authority over the company's issuance of capital stock. *Metge*, 762 F.2d at 630-32. In *Schlifke*, the Seventh Circuit held that "the fact that the Bank extended a loan to a company to finance its investment programs and took measures to secure its loans does not establish actual exercise of control." *Schlifke*, 866 F.2d at 949.

1 Courts can and do routinely dismiss control person claims with allegations similar to those here at the pleading stage. *See*, *e.g.*, *Gupta*, 900 F. Supp. at 1241 (dismissing control person claim against corporate shareholder with board representation); *Fouad v. Isilon Sys., Inc.*, No. 07-cv-01764, 2008 WL 4512397, at *13 (W.D. Wash. Dec. 29, 2008) (dismissing control person claims against three venture capital firms); *O'Sullivan v. Trident Microsystems, Inc.*, No. 93-cv-20621, 1994 WL 124453, at *13, *18 (N.D. Cal. Jan. 31, 1994) (ownership of 9.5% of a defendant's stock coupled with a board designee is insufficient to state a claim for control person liability).

## D. Leave To Amend Should Be Denied

Plaintiff has had two opportunities to state a claim against Lion Capital but has not been able to do so. At this point, Plaintiff's claims should be dismissed with prejudice. *See Jack Rowe Assocs., Inc. v. Sanyo Elec., Inc.*, No. 87-5700, 1989 WL 1160096, at *4 (9th Cir. Oct. 16, 1989) ("Given [defendant's] two opportunities to properly plead the elements of fraud and [defendant's] pleading history, the trial judge did not abuse her discretion by denying further leave to amend."); *Lopes v. Vieira*, No. 06-cv-01243, 2010 WL 3853287, at *22 (E.D. Cal. Sept. 30, 2010) (granting motion to dismiss without leave to amend because plaintiffs "have had two opportunities to allege seller liability against [defendants] and have been unable to do so").

## **CONCLUSION**

For the foregoing reasons, Lion Capital respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

Dated: March 30, 2012

                                      SIMPSON THACHER & BARTLETT LLP

                                      By   */s/ Chet A. Kronenberg*
                                            Chet A. Kronenberg
                                            Michael G. Freedman

                                       Attorneys for Defendants
                                       LION CAPITAL LLP and LION
                                       CAPITAL (AMERICAS) INC.