SETH ARONSON (S.B. #100153)
saronson@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
COURTNEY GOULD (S.B. #274417)
cgould@omm.com
JORDAN TETI (S.B. #284714)
jteti@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants Dov Charney and
Adrian Kowalewski

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE AMERICAN APPAREL, INC. SHAREHOLDER LITIGATION<br><br>This Document Relates to ALL ACTIONS, | Case No.  CV-10-6352 MMM (JCG) (Consolidated)<br><br>**(1) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT;**<br><br>**(2) NOTICE OF JOINDER AND JOINDER TO DEFENDANT AMERICAN APPAREL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT; and**<br><br>**(3) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Hearing Date: June 3, 2013<br>Hearing Time: 10:00 a.m.<br>Place: Courtroom 780<br><br>Judge: Hon. Margaret M. Morrow<br>Complaint Filed:  March 15, 2013<br>Trial Date:  TBD |

## NOTICE OF MOTION AND JOINDER

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 10:00 a.m., on June 3, 2013, or as soon thereafter as may be heard, in Courtroom 780 of the United States District Court for the Central District of California, located at 255 E. Temple St., Los Angeles, California, 90012 (Roybal Building), Defendants Dov Charney and Adrian Kowalewski (the "Individual Defendants") will, and hereby do, move this Court, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act (15 U.S.C. § 78u-4 *et seq.*), to dismiss the Second Amended Class Action Complaint for Violation of Federal Securities Laws (the "SAC") filed February 15, 2013, by Lead Plaintiff Charles Rendelman ("Plaintiff").

PLEASE TAKE FURTHER NOTICE THAT the Individual Defendants join in Defendant American Apparel, Inc.'s Motion to Dismiss Second Amended Class Action Complaint ("American Apparel's Motion") filed on March 15, 2013, and the Request for Judicial Notice in Support of Defendant American Apparel, Inc.'s Motion to Dismiss Second Amended Class Action Complaint filed concurrently with American Apparel's Motion ("American Apparel's Request for Judicial Notice"). The Individual Defendants also join in Defendants Lion Capital LLP and Lion Capital (Americas) Inc.'s Motion to Dismiss Second Amended Class Action Complaint (Lion Capital's Motion) filed on March 15, 2013, and the Request for Judicial Notice in Support of Defendants Lion Capital LLP and Lion Capital (Americas) Inc.'s Motion to Dismiss Consolidated Class Action Complaint filed concurrently with Lion Capital's Motion ("Lion Capital's Request for Judicial Notice").

The Individual Defendants' Motion is based on this Notice; American Apparel's Motion and Memorandum of Points and Authorities; the Memorandum of Points and Authorities attached hereto; matters of which judicial notice may be taken; and such other evidence and argument that the Court may receive.

1      This Motion is made following the conference between counsel for the

2  Individual Defendants, counsel for American Apparel, counsel for Lion Capital,

3  and Lead Plaintiff's counsel pursuant to L.R. 7-3 that took place March 11, 2013.

4

5      Dated:     March 15, 2013     O'MELVENY & MYERS LLP

6

7                         By:   /s/ Seth Aronson

8                              Seth Aronson
Attorneys for Defendants Dov Charney
and Adrian Kowalewski

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION .................................................................................. 1

II.     SUMMARY OF THE SAC'S ALLEGATIONS AGAINST
        CHARNEY AND KOWALEWSKI ..................................................... 2

III.    THE SAC FAILS TO ADDRESS THE DEFECTS THAT LED
        THE COURT TO DISMISS PLAINTIFF'S FAC ............................. 4

        A.      Plaintiff has failed to allege a strong inference of scienter
                relating to Charney's and Kowalewski's alleged misstatements
                concerning immigration compliance. ........................................... 6

        B.      Plaintiff again fails to show that Charney and Kowalewski
                knowingly made false statements about the effect of hiring
                replacement workers. ................................................................. 10

        C.      Plaintiff again fails to show that Charney or Kowalewski
                knowingly made false statements about the Company's
                financial systems and internal controls. ................................... 16

        D.      Plaintiff's new allegations that Charney and Kowalewski
                concealed the Company's breach of its debt covenant do not
                support a federal securities claim. ............................................ 20

IV.     THIS COURT SHOULD DISMISS PLAINTIFF'S SECTION
        20(a) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS. ...... 24

V.      CONCLUSION .................................................................................. 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

CASES

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*,
    756 F. Supp. 2d 1113 (D. Ariz. 2010) ................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................... 5

*Brown v. China Integrated Energy, Inc.*,
    875 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................................ 23

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ................................. 20

*Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) ........................................................................... 12

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002) ............................................................................. 5

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ........................................................................... 5, 6

*In re A-Power Energy Generation Sys. Sec. Litig.*,
    MDL 11-2302-GW (CWx), 2012 U.S. Dist. LEXIS 79417, 2012 WL
    1983341 (C.D. Cal. May 31, 2012) ................................................................... 19

*In re Century Aluminum Co. Sec. Litig.*,
    749 F. Supp. 2d 964 (N.D. Cal. 2010) ......................................................... 23, 24

*In re Century Aluminum Co. Secs. Litig.*,
    2011 U.S. Dist. LEXIS 21406 (N.D. Cal. Mar. 3, 2011) ..................................... 7

*In re Downey Secs. Litig.*,
    No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ......... 7, 13

*In re GlenFed Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ............................................................................... 5

*In re Immersion Corp. Secs. Litig.*,
    2011 U.S. Dist. LEXIS 24886 ............................................................................. 8

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Impac Mortg. Holdings, Inc., Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008)..................................................10, 11, 22

*In re New Century*,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008) ........................................................... 6

*In re Nvidia Corp. Secs. Litig.*,
  2011 U.S. Dist. LEXIS 117807 (N.D. Cal. Oct. 12, 2011) ............................... 15

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010) ........................................................... 21

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ........................................................................... 5

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ........................................................................... 6

*In re VeriFone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) ........................................................................... 24

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ................................................................... 15, 24

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................... 5

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ......................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ............................... 6

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ....................................................................... 5, 7

**STATUTES**

15 U.S.C. § 77z-2(c) ...................................................................................... 22

15 U.S.C. §78t(a) .......................................................................................... 24

- iii -

**TABLE OF AUTHORITIES**
**(continued)**

Page

15 U.S.C. § 78u-4 ................................................................................................... 5

15 U.S.C. § 78u-4(b)(1) ......................................................................................... 5

15 U.S.C. § 78u-4(b)(2) ......................................................................................... 5

15 U.S.C. § 78u-5 ................................................................................................. 12

15 U.S.C. § 78u-5(c) ............................................................................................ 22

Section 10(b).................................................................................................passim

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Plaintiff's Second Amended Complaint ("SAC"), like his three earlier

4   attempts,[1] describes immigration compliance issues at American Apparel, not

5   violations of the federal securities laws by Dov Charney and Adrian Kowalewski.

6   The SAC shows a U.S.-based manufacturer, the largest domestic clothing producer

7   in America, struggling to preserve thousands of garment jobs in this country, and to

8   keep tabs on its largely immigrant workforce.  The SAC does not show that Mr.

9   Charney and Mr. Kowalewski knowingly made false statements about the

10  Company, or that they did so with deliberate recklessness, as a shareholder must

11  adequately allege under Section 10(b) of the Securities Exchange Act of 1934

12  ("Exchange Act").  Mr. Charney's political agenda and management style—

13  whether he treats his foreign-born workers as "family" or has "deftly exploited" his

14  belief in immigration reform to create a recognizable brand—are not the stuff of

15  securities fraud.  In twice dismissing Plaintiff's Section 10(b) claim against Mr.

16  Charney and Mr. Kowalewski, this Court has explicitly reminded Plaintiff of his

17  burden, that he cannot impute knowledge of the Company's compliance issues to

18  the individual defendants through vague, conclusory allegations about their

19  positions or access.

20        Despite the Court's clear guidance, the SAC does not address, much less

21  remedy, any of this Court's concerns.  Instead, Plaintiff makes the same improper

22  leaps as before, speculating again that Mr. Charney and Mr. Kowalewski would

23  have or must have or should have known that their statements were false by virtue

24  of their executive-level positions and their alleged involvement in every aspect of

25  American Apparel's operations.  The Private Securities Litigation Reform Act's

26

---

27  [1] Although he calls it his *Second* Amended Complaint, this is actually Plaintiff's
    fourth pleading attempt, i.e., the original complaint filed on August 25, 2010
    (Docket No. 1), the CAC filed on April 29, 2011 (Docket No. 66), the FAC filed on

28  February 27, 2012 (Docket No. 106), and now the SAC.

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

("Reform Act") heightened pleading standards demand more.  In the SAC, Plaintiff has attempted to prop up his case by adding new allegations related to the Company's alleged withholding of critical information from Deloitte and the Company's purported violation of its debt covenant with Lion Capital.  But while Plaintiff imagines numerous improprieties, nowhere does the SAC allege facts showing that Mr. Charney and Mr. Kowalewski even knew of these events when they made their alleged misstatements, which alone is fatal to Plaintiff's claim.  Although Plaintiff has rounded up three additional confidential witnesses ("CWs"), they too do nothing to rescue the SAC.  Like Plaintiff's 12 other CWs, they have no basis for attesting to what Mr. Charney and Mr. Kowalewski actually knew and, instead, can only guess.

After four attempts in almost three years, Plaintiff is right where he started: unable to establish that Mr. Charney's and Mr. Kowalewski's statements were false, and that they knew their statements were false when they made them.  Once again, this Court should dismiss Plaintiff's Section 10(b) claim against Mr. Charney and Mr. Kowalewski and, this time, with prejudice.

## II.    SUMMARY OF THE SAC'S ALLEGATIONS AGAINST CHARNEY AND KOWALEWSKI

Mr. Charney—an Ernst & Young "Entrepreneur of the Year" and a recipient of the Michael Awards' "Retailer of the Year"—founded American Apparel in 1998 and took it public in 2007.  He currently serves as American Apparel's President and CEO.  (SAC ¶ 49.)  Mr. Kowalewski was an investment banker in London and New York, and is a graduate of Harvard University and the University of Chicago School of Business.  He was American Apparel's Executive Vice President and CFO during the relevant period.  (SAC ¶ 52.)  In a fiercely competitive industry that relies on offshore labor, American Apparel has adhered to a "sweatshop free" ethos and grown into the largest domestic clothing manufacturer in the United States.  (SAC ¶ 98.)

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

Plaintiff's SAC, like the pleading attempts before it, derives most of its allegations from the 2008 U.S. Immigration and Customs Enforcement inspection of the Company's Los Angeles plant, which resulted in the termination of 1,600 manufacturing employees and the alleged loss of another 700 or so workers.  In its January 16, 2013 Order dismissing the FAC's allegations against Mr. Charney and Mr. Kowalewski, the Court determined that the Company's compliance measures were not as diligent as the Company was publicly reporting them to be, and that Plaintiff had sufficiently pleaded falsity and scienter against the Company.  But even if the Company had potentially made misstatements about its employment verification practices, the Court concluded that Plaintiff had failed to show that Mr. Charney and Mr. Kowalewski had done the same.  (1/16/2013 Order at 51.)

Although it has swelled by almost 30 pages, the SAC is largely duplicative of the FAC's rejected arguments, with only a few notable amendments.  Its allegations fall into four categories: (1) Mr. Charney's and Mr. Kowalewski's statements relating to American Apparel's immigration compliance; (2) Mr. Charney's and Mr. Kowalewski's statements regarding the impact of American Apparel's 3Q and 4Q 2009 manufacturing employee terminations and subsequent replacement hiring; (3) Mr. Charney's and Mr. Kowalewski's statements about American Apparel's internal controls over financial reporting; and—a new category added by the SAC—(4) Mr. Charney's and Mr. Kowalewski's statements relating to compliance with a Lion Capital debt covenant for the four-quarter period ending on March 31, 2010.  (*See*, *e.g.*, SAC ¶¶ 120, 128, 184, 196.)

In the first category—immigration compliance— Plaintiff now cites the SEC filings that Mr. Charney and Mr. Kowalewski signed containing alleged misstatements about the Company's immigration compliance.  (*See*, *e.g.*, SAC ¶ 10, n. 5; ¶ 17, n. 11; ¶ 123, n. 30.)  Plaintiff also offers meager supplements to the CW testimony on this question.  (*See*, *e.g.*, ¶¶ 72, 79-81, 83.)  None of these additions suffice to establish a strong inference that Mr. Charney and Mr. Kowalewski signed

THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   the statements with personal knowledge of their falsity or deliberate recklessness.

2        In the second category—the workforce terminations—the SAC introduces

3   three new CWs whose testimony is intended to salvage claims relating to Mr.

4   Charney's and Mr. Kowalewski's statements about the impact of the Company's

5   terminations and hiring, even though none of them, like the previous CWs, reported

6   directly to Mr. Charney or Mr. Kowalewski.  (SAC ¶¶ 94-97.)

7        In the third category—internal controls—the SAC attempts to buttress

8   allegations that Mr. Charney and Mr. Kowalewski made misrepresentations about

9   internal controls by adding citations to Generally Accepted Auditing Standards

10  ("GAAS") without showing what those rules would have required.  (*See, e.g., id.* at

11  ¶¶ 210, 213.)

12       In the fourth category—Lion Capital—the SAC alleges that Mr. Charney and

13  Mr. Kowalewski professed compliance with the debt covenant, despite the

14  Company's debt-to-EBITDA ratio exceeding what the covenant allowed.  (SAC ¶

15  198.)  Even assuming that there was a breach and that the debt-covenant statements

16  are actionable, Plaintiff does not plead facts showing that they knew of the

17  purported breach when they made the alleged misstatements.

18       In sum, Plaintiff repeats the same infirmities that proved fatal to both the

19  CAC and FAC, and challenged again by the Court to plead specific, concrete

20  allegations against Mr. Charney and Mr. Kowalewski in the SAC, Plaintiff merely

21  adds to his complaint's haze of ambiguity and innuendo.

## III.   THE SAC FAILS TO ADDRESS THE DEFECTS THAT LED THE COURT TO DISMISS PLAINTIFF'S FAC

24       Plaintiff fails to allege facts to state any claim against Mr. Charney or Mr.

25  Kowalewski for violation of Section 10(b) or Rule 10b-5 of the Exchange Act.  To

26  survive a motion to dismiss, Plaintiff must plead facts sufficient to meet the

27  heightened standard that the federal securities law establishes for fraud claims.

28  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1   requires more than labels and conclusions, and a formulaic recitation of the

2   elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550

3   U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007).  As this

4   Court has recognized, the complaint must allege "why the disputed statement was

5   untrue or misleading ***when made***."  *In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541,

6   1549 (9th Cir. 1994) (en banc) (emphasis added); *see also* (1/13/2013 Order at 27.)

7   Further, under the Reform Act, 15 U.S.C. § 78u-4, a securities plaintiff must plead

8   with particularity each material statement alleged to have been misleading and the

9   reason or reasons why those statements are misleading.  15 U.S.C. § 78u-4(b)(1).

10   The Reform Act's requirements "prevent[ ] a plaintiff from skirting dismissal by

11   filing a complaint laden with vague allegations of deception unaccompanied by a

12   particularized explanation stating why the defendant's alleged statements or

13   omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540

14   F.3d 1049, 1061 (9th Cir. 2008) (*citing Falkowski v. Imation Corp.*, 309 F.3d 1123,

15   1133 (9th Cir. 2002)).

16         The Reform Act also requires that a plaintiff "state with particularity facts

17   giving rise to a strong inference that the defendant acted with the required state of

18   mind."  15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit's requisite state of mind under

19   the Reform Act is "deliberate recklessness" or intent "so obvious that the actor must

20   have been aware of it."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991

21   (9th Cir. 2009) (*quoting In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976

22   (9th Cir. 1999)).  Allegations of mere negligence are insufficient.  *Glazer Capital*

23   *Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("At most, it creates the

24   inference that he *should* have known of the violations.  This is not sufficient to meet

25   the stringent scienter pleading requirements of the [Reform Act].").  A "strong"

26   inference of such deliberate recklessness or intent under § 78u-4(b)(2) means "more

27   than merely plausible or reasonable—it must be cogent and at least as compelling

28   as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues &*

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

*Rights, Ltd.*, 551 U.S. 308, 314, 127 S. Ct. 2499, 2505, 168 L. Ed. 2d 179, 188 (2007).

> ### A. Plaintiff has failed to allege a strong inference of scienter relating to Charney's and Kowalewski's alleged misstatements concerning immigration compliance.

Despite billowing to 117 pages, the SAC again has failed to state a claim against Mr. Charney or Mr. Kowalewski on the basis of alleged misstatements about the Company's compliance with immigration laws.  When a plaintiff seeks to recover against individual defendants, he generally must establish a strong inference of scienter ***for each individual defendant.***  *See Glazer*, 549 F.3d at 745 (9th Cir. 2008) (holding that Reform Act requires plaintiff to plead "in great detail" facts that show scienter as to each individual and granting defendant CEO's motion to dismiss where plaintiff failed to allege facts that directly demonstrated scienter).  Where, as here, a court finds scienter for the company after conducting a holistic analysis, it must nonetheless ***separately*** determine whether the plaintiff has sufficiently pleaded scienter for the individual defendants.  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703-04 (9th Cir. 2012) (engaging in holistic review of company and individuals, but requiring individualized proof of scienter for individual defendants); *see also Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1142 (D. Ariz. 2010) (determining under holistic review that plaintiffs adequately alleged scienter for some, but not all, defendants); *In re New Century*, 588 F. Supp. 2d 1206, 1228 (C.D. Cal. 2008) (discussing scienter of officer defendants together but denying motion to dismiss only because allegations demonstrate actual knowledge specific to each officer defendant).  Thus, in its 2013 Order, this Court made clear that Plaintiff cannot proceed against Mr. Charney and Mr. Kowalewski merely because he had stated a

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1  claim against the Company[2]; instead, Plaintiff must separately show that Mr.

2  Charney and Mr. Kowalewski—as opposed to the Company generally or

3  unspecified executives—made misstatements and did so with scienter.  (*See* Order

4  at 46-51 (conducting separate analysis for Charney and Kowalewski).)

5         Here, Plaintiff has failed to plead a strong inference of scienter for Mr.

6  Charney or Mr. Kowalewski.  While Plaintiff has now alleged that Mr. Charney and

7  Mr. Kowalewski signed the press releases and reports at issue, a ministerial duty

8  says nothing of intent.  *See Zucco*, 552 F.3d at 1003-04 ("Boilerplate language in a

9  corporation's 10-K form, or required certifications under Sarbanes-Oxley section

10  302(a) . . . add nothing substantial to the scienter calculus.").[3]  Plaintiff still must

11  allege facts showing that Mr. Charney and Mr. Kowalewski signed the documents

12  with actual knowledge of their alleged falsity.  As this Court already found,

13  however, none of Plaintiff's individual allegations is enough to establish scienter

14  for the Company—let alone for Mr. Charney and Mr. Kowalewski.  (1/16/2013

15  Order at 31-39.)  This Court found fatal that CW9 and CW10, the witnesses whose

16  allegations most strongly supported Plaintiff's claim, "were at least two or three

17  steps down the chain of command" and made statements based only on "belief" and

18  "undisclosed 'experience'" that upper management knew of the deficiencies in the

19  Company's immigration documentation.  (*Id.* at 35.)  As for the Company's failure

20  to disclose the ICE inspection and its outcome until March 2008, this Court held

---

21  [2] *See* 1/16/2013 Order at 46 ("Although the court has concluded that plaintiff[ ]

22  [has] adequately alleged that defendant American Apparel knowingly or recklessly
   made misrepresentations concerning its immigration compliance, the court must

23  assess whether the same is true of plaintiff['s] allegations regarding Charney and
   Kowalewski.").

24  [3] *See also In re Downey Secs. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL
   2767670, at *9 (C.D. Cal. Aug. 21, 2009) (holding that signing public filings is not

25  sufficient to raise strong inference of scienter because, if it were, "scienter would be
   established in every case where there was an accounting error or auditing mistake

26  made by a publicly traded company, thereby eviscerating the pleading requirements
   for scienter set forth in the PSLRA"); *In re Century Aluminum Co. Secs. Litig.*,

27  2011 U.S. Dist. LEXIS 21406, at *10 (N.D. Cal. Mar. 3, 2011) (dismissing
   amended complaint where plaintiffs failed to add allegations to previously

28  dismissed complaint beyond individual defendants having "reviewed, approved and
   signed" 10-Q, 10-K, and other SEC filings).

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

that it "strains credulity to believe that investors would have changed their views regarding invest[ing] in American Apparel" merely upon learning that the Company had come up eight I-9 forms short—presenting agents with 3,554 instead of the required 3,562. (*Id.* at 36.)

Even when considered holistically, Plaintiff's allegations still do not establish scienter for Mr. Charney or Mr. Kowalewski. In its 1/16/2013 Order, the Court identified factors that may suggest that the Company—or someone, somewhere, in the Company—knew of the compliance problems. Many of those factors, however, do not demonstrate specifically that Mr. Charney or Mr. Kowalewski knew. For example, critical to the Court's holistic analysis were Plaintiff's allegations that, as early as fall 2007, the Company's human resources personnel were allegedly falsifying immigration documents. (*See* 1/16/2013 Order at 40.) But even assuming these allegations are true, they suggest only that the Company (or its HR office) knew about potential compliance problems—and not specifically Mr. Charney or Mr. Kowalewski. Indeed, this Court explicitly noted that CWs 9 and 10, upon whom Plaintiff relies to establish the alleged falsification of documents, were too far removed from Mr. Charney and Mr. Kowalewski to sufficiently establish knowledge on their part.[4] (*See id.* at 35-36 (noting that "CW9 offers only a 'belief' that HR supervisors were receiving direction from Charney and high-level management" and that "CW10 also provides no facts suggesting that Charney/Kowalewski knew of the practices").)

Similarly, allegations that the Company's 2008 10-K falsely stated that the Company had not had any further communication with ICE—even if indicative of scienter for the Company (1/16/2013 Order at 41)—are not applicable to Mr.

---

[4] Plaintiff's new allegations about CW9 and CW10 do not remedy these deficiencies. Plaintiff added facts regarding the job responsibilities of CW9 and CW10 (SAC ¶79-80; 83), but because neither reported to Mr. Charney or Mr. Kowalewski directly, Plaintiff does not, and cannot, plead that these confidential witnesses had sufficient closeness to know Mr. Charney's or Mr. Kowalewski's scienter. *In re Immersion Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 24886, at **18-21 (N.D. Cal. Mar. 11, 2011).

THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  Charney or Mr. Kowalewski.  As pleaded in the SAC, the allegations merely shows

2  that the Company's outside counsel claimed in a July 3, 2009 article that the

3  Company had been having ongoing communications with ICE since January 2008.

4  (SAC ¶¶ 17, 115.)  Nowhere does Plaintiff provide the contents of those alleged

5  communications.  Without knowing the contents, there is no basis for assuming that

6  Mr. Charney or Mr. Kowalewski even knew about them.[5]  For example, given

7  Plaintiff's lack of specificity, a strong opposing inference is that ICE may have

8  been merely asking follow-up questions, which were fielded by human resources

9  personnel.  If so, there is no reason to assume that Mr. Charney or Mr. Kowalewski

10 was aware of these communications.

11       As for the crux of what remains from this Court's previous holistic analysis

12 —the "sheer magnitude of American Apparel's immigration violations" (*see*

13 1/16/2013 Order at 39-46)—this factor alone cannot establish scienter for Mr.

14 Charney or Mr. Kowalewski.  In finding scienter even for the Company, the Court

15 did not rely on sheer magnitude alone.  (*See id.*)  Further, by itself, this factor shows

16 only that Mr. Charney and Mr. Kowalewski "should have known" about the

17 violations, which this Court already held does not establish scienter.  As this Court

18 found the first time it dismissed Plaintiff's claim against Mr. Charney, Plaintiff

19 must show "facts indicating that Charney was ***in possession of concrete knowledge***

20 that would have led him to conclude that a substantial portion of American

21 Apparel's workers were undocumented," and "the inference that [an individual

22 defendant] ***should*** have known of the violations" is not enough.  (1/13/2012 Order

23 at 54-55 (emphasis added).)  In any event, the most that Plaintiff can suggest is that

24 Mr. Charney and Mr. Kowalewski "should have known" because of their positions

25 _____

26 [5] In the SAC, Plaintiff makes the conclusory allegation that "ICE documents
   corroborate that, from January 2008 to at least July 2009, ICE updated Defendants
27 about the Company's immigration law violations."  (SAC ¶ 17.)  As this Court
   previously found, however, Plaintiff must plead facts to support his conclusory
28 assertions.  ((1/16/2013 Order at 57) (faulting Plaintiff for "fail[ing] to plead any
   facts supporting [his] conclusory allegations").)

1   at the Company.  But courts have long held that bare allegations about individual

2   defendants' positions or roles cannot establish scienter.  *South Ferry LP, No. 2 v.*

3   *Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) ("Where a complaint relies on

4   allegations that management had an important role in the company but does not

5   contain additional detailed allegations about the defendants' actual exposure to

6   information, it will usually fall short of the PSLRA standard.").

      **B.**     **Plaintiff again fails to show that Charney and Kowalewski knowingly made false statements about the effect of hiring replacement workers.**

10        Plaintiff's SAC also fails to state a claim against Mr. Charney and Mr.

11  Kowalewski based on their statements about the impact of hiring replacement

12  workers on the Company's operations.  Some of these statements were present

13  tense, the others forward looking.  Plaintiff alleges that Mr. Charney and Mr.

14  Kowalewski made the following purported false present tense statements:

- Mr. Charney's November 10, 2009 characterization of the Company's transition to new workers as "virtually seamless."  (SAC ¶ 133.)
- Mr. Kowalewski's November 10, 2009 statement that he "think[s]" the layoffs "improved [the Company's] overhead situation."  (*Id.* ¶ 132.)

20  This Court already held that Mr. Charney's November 10, 2009 comment that the

21  employee turnover had been "virtually seamless" is mere "puffery." (1/16/2013

22  Order at 57 n.182 ("The statement does not clearly state what was 'virtually

23  seamless,' and it is surrounded by phrases concerning the 'terrific' and 'fantastic'

24  work done by American Apparel employees.  These are classic examples of

25  puffery.").)  Puffery is not "an actionable misrepresentation of fact."  (*See id.* at

26  57); *see also In re Impac Mortg. Holdings, Inc., Sec. Litig.*, 554 F. Supp. 2d 1083,

27  1096 (C.D. Cal. 2008) ("[V]ague, generalized assertions of corporate optimism or

28  statements of 'mere puffing' are not actionable material misrepresentations under

federal securities laws."). As for Mr. Kowalewski's vague statement about the "overhead situation," he explicitly caveated his entire statement by adding that "a lot of the workers that [the Company] lost were some of [its] most efficient people." (SAC ¶ 132.) Plaintiff pleads no facts that show that Mr. Kowalewski's statement, when framed in the proper context, is false.

The remaining statements by Mr. Charney and Mr. Kowalewski or by the Company (and signed by Mr. Charney or Mr. Kowalewski) are forward-looking statements that concern the future impact of the hiring of replacement workers:

- Mr. Kowalewski's November 10, 2009 statement that ICE enforcement action was not "going to have a material impact to our financial results." (*Id.* ¶ 132.)

- Mr. Charney's November 10, 2009 statement agreeing with Mr. Kowalewski's assessment of the terminations' potential impact as not material. (*Id.* ¶ 133.)

- Mr. Kowalewski's August 13, 2009, statement that "[w]hen we disclosed the ICE notice on July 1, [2009,] we indicated that at the time, despite the fact that it was difficult to estimate the impact would be on our results, we didn't believe it would have a material impact." (*Id.* ¶ 129.)

- The statement in the Company's June 30, 2009 8-K, which Mr. Charney signed, providing that "the Company does not presently believe that the loss of employees would have a materially adverse impact on its financial results." (*Id.* ¶ 128.)

- The statement in the Company's July 1, 2009 8-K, which Mr. Kowalewski signed, providing that to the extent that the Company may need to hire replacement workers, "the Company presently believes that it would only need to hire for a fraction of those employees that would be terminated." (*Id.* ¶ 123.)

These forward-looking statements are protected by the Reform Act safe harbor, which Congress enacted, in part, to encourage corporations to provide

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1    investors with management's future expectations by protecting those forward-

2    looking statements with a statutory safe harbor. *See* H.R. Conf. Rep. 104-369, at 42

3    (1995), reprinted in 1995 U.S.C.C.A.N. 730, 741. The Reform Act provides two

4    ***independent bases*** on which a court must dismiss claims based on forward-looking

5    statements. First, forward-looking statements are immunized from liability if they

6    are accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5. Second,

7    even if unaccompanied by cautionary language, forward-looking statements cannot

8    support liability unless they are made with ***actual knowledge*** of falsity. *Id.*; *see*

9    *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353

10    F.3d 1125 (9th Cir. 2004) (applying Reform Act's safe harbor as two independent

11    protections from liability).

12       Mr. Charney's and Mr. Kowalewski's forward-looking statements were

13    accompanied by meaningful cautionary language.[6] The June 30, 2009 8-K signed

14    by Mr. Charney also specifically disclaimed that "the ultimate impact [of the loss of

15    employees] is difficult to predict at this time, and that "***no assurances*** can be given

16    as to how, if at all, the loss of a significant number of manufacturing employees

17    will affect its business and operations." (Jones Dec. Exh. 13, (Docket No. 74-3) at

---

18    [6] The August 13, 2009 conference call and transcript was preceded by the
19    statement: "This press release contains forward-looking statements which are based upon the current belief and expectations of our management team that are subject to
20    risks and uncertainties that could cause actual results and/or the timing of events to differ materially from those set forth in the forward looking statements . . . ."
21    (Declaration of Gila D. Jones in Support of Defendant American Apparel, Inc.'s Motion to Dismiss Consolidated Class Action Complaint, filed on May 31, 2011
22    ("Jones Dec.") Exh. 15, (Docket No. 74-3) at 66.) The November 10, 2009 conference call and transcript was preceded by the statement: "[D]uring this call,
23    we will be making forward-looking statements that are based upon the current beliefs and expectations of American Apparel's management team that are subject
24    to risks and uncertainties which could cause actual results and timing of those results to differ materially from management expectations." (Jones Dec. Exh. 17,
25    (Docket No. 74-3) at 84.) The July 1, 2009 press release on Form 8-K concludes with the statement: "This press release may contain forward-looking statements
26    which are based upon the current beliefs and expectations of our management, but are subject to risks and uncertainties, which could cause actual results and/or the
27    timing of events to differ materially from those set forth in the forward-looking statements . . . ." (Jones Dec. Exh. 14, (Docket No. 74-3) at 64.) The Court has
28    taken judicial notice of the Exhibits attached to the Jones Dec. (1/13/12 Order at 26-31.)

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

57.)  Similarly, the July 1, 2009 8-K signed by Mr. Kowalewski explicitly stated that "the Company is not able to accurately assess what impact the loss of employees will have on its operations."  (*Id.*at Exh. 14, (Docket No. 74-3) at 63.)  As for the August 13, 2009 conference call, while Mr. Kowalewski stated that he did not "believe" that the impact of the loss of employees was "material," he also repeatedly said that it was "difficult to estimate."  (*See* SAC ¶ 129; Jones Dec. Exh. 15, (Docket No. 74-3) at 66.)  And on the November 10, 2009 conference call, Mr. Kowalewski emphasized that "a lot of the workers that [the Company] lost were some of [its] most efficient people."  (SAC ¶ 132; Jones Dec. Exh. 17, (Docket No. 74-3) at 84.)

Even if, Mr. Charney's and Mr. Kowalewski's forward-looking statements were not accompanied by meaningful cautionary language (and they were), they are protected by the Reform Act safe harbor because the SAC fails to show that Mr. Charney and Mr. Kowalewski had actual knowledge that the statements were false when made.  Indeed, Plaintiff has not shown that the full impact of the reduction in workforce—which involved terminating workers ***and*** hiring workers—was even apparent when Mr. Charney and Mr. Kowalewski made the statements at issue.[7] Finding "notable that the alleged misrepresentations occurred in a finite time frame," this Court earlier held that "Plaintiff['s] allegations of falsity are insufficient insofar as [he] suggest[s] that defendants should have known the ultimate impact of the ICE investigation, since 'even reasonable predictions [can] turn out to be wrong.'"  (*Id.* at 56 (quoting *In re Downey*, 2009 WL 2767670, at *5).)  That is true particularly because when these statements were made—June to November 2009—the Company was still replacing the undocumented workers and continued to do so until 2010.[8]  Thus, at the time Mr. Charney and Mr. Kowalewski

---

[7] In dismissing Plaintiff's claim, this Court specifically faulted Plaintiff for not "clearly alleg[ing] when the full effects of the reduction were evident, how they were made known to the management, or the contents of reports that management reviewed."  (1/16/2013 Order at 58.)

[8] In June 2009, ICE notified the Company that 1,800 of its workers were potentially

THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

made these forward-looking statements, they could not have known about the overall impact of a process that was still ongoing.  And while Plaintiff now alleges that the Company experienced product-efficiency and inventory problems as a result of replacing the workers, many of Plaintiff's own allegations repeatedly indicate that these purported issues arose in late 2009—around the same time and potentially even *after* Mr. Charney and Mr. Kowalewski made their predictions.  For example, CW13 stated that problems did not become apparent until within "a few months" of the terminations, which did not conclude until October 2009.[9] (SAC ¶ 95.)  Similarly, CW2 claims that the "impact of the dismissals of [the] manufacturing employees was increasingly evident at the Company by *4Q09*."  (*Id.* ¶ 66 (emphasis added).)

Finally, as before, Plaintiff also improperly attempts to establish actual knowledge by alleging that Mr. Charney and Mr. Kowalewski had access to negative reports.  For example, Plaintiff contends that the Company's ERP system, which purportedly allowed the Company to closely monitor its inventory, somehow placed Mr. Charney and Mr. Kowalewski on notice of alleged inventory problems.  (*See* SAC ¶¶ 148-154.)  Plaintiff added three new confidential witnesses—CWs 13, 14, and 15—who suggest that Mr. Charney and Mr. Kowalewski had knowledge of manufacturing and financial issues.  CW13, a district manager who worked "part of the time in Los Angeles," claims that he or she "interacted" with Charney, and that quality issues were not evident until "[w]ithin a few months of the dismissals."  (*Id.*

---

unauthorized to work in the United States.  (SAC ¶ 122.)  The Company then investigated ICE's findings, so the terminations did not conclude until October 2009.  (*Id.* ¶ 134 ("American Apparel further told ICE that 'almost all of the workers either failed to show for work, resigned from their jobs, or were terminated by September 2009, with a smaller number being terminated by October.").  The hiring of the replacement workers continued well into 2010.  (*Id.* ¶ 27 (noting that the Aug. 17, 2010 8-K states that ". . . hiring of over 1,600 net new manufacturing workers during the second quarter of 2010.").
[9] *See* SAC ¶ 95 ("[W]ithin a few months of the manufacturing terminations, the quality of American Apparel's product declined."); *see also id.* ¶¶ 95, 141, 24 ("Within a few months of the dismissals, retail store employees began to complain to CW13 that they were not receiving enough of these top sellers in a variety of colors to meet customer demands.").

14

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

¶¶ 94-95.)  CW14, an inventory manager, alleges that he or she "created a report that allowed Charney to view the styles and colors available by retail store."  (*Id.* ¶ 96.)  CW15, an internal financial reporting manager, contends that Mr. Kowalewski "had read-only access to the monthly financial information from the divisions," and that he or she attended monthly meetings, along with Mr. Kowalewski, "where gross margins were discussed."  (*Id.* ¶ 97.)

The problem with the CWs' attempts to divine actual knowledge, however, is that none of their allegations show precisely what Mr. Charney and Mr. Kowalewski purportedly knew, let alone when they knew it.  Numerous courts have rejected claims of scienter when confidential witnesses, who did not report directly to the defendants, merely allege that defendants had "access" to information.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (allegations that "defendants had access to internal data demonstrating a decline in sales . . ." were insufficient to demonstrate scienter); *see also In re Nvidia Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 117807, at *20 (N.D. Cal. Oct. 12, 2011) (finding no scienter where confidential witnesses fail to report any contact with senior management regarding subject of misstatement).  And as this Court found, "[g]eneral references to reports defendants may or may not have received do not aid plaintiff[ ]"; Plaintiff failed to plead "the content of the reports" and specifically that "Charney and Kowalewski reviewed reports containing damning information."  (1/16/2013 Order at 55.)  While Plaintiff claims that Mr. Charney and Mr. Kowalewski *could* access the ERP system, nothing in the SAC shows that Mr. Charney or Mr. Kowalewski *did* in fact access the system before making the statements at issue, or, if they had, what the ERP system would have showed.  Similarly, the new confidential witnesses contend only that Mr. Charney and Mr. Kowalewski had access to inventory and financial information.  Again, Plaintiff never establishes whether Mr. Charney or Mr. Kowalewski possessed the information before they made the

1   statements at issue, or what specifically the information showed.[10]

2     **C.** **Plaintiff again fails to show that Charney or Kowalewski**
3       **knowingly made false statements about the Company's financial**
4       **systems and internal controls.**

5     While Plaintiff's SAC is replete with allegations about purportedly reckless

6   business practices, Plaintiff still has not shown how those alleged practices render

7   Mr. Charney's and Mr. Kowalewski's statements about the Company's financial

8   systems and internal controls false.  As this Court found, Mr. Charney's 2008 and

9   2009 statements about pursuing "a strict corporate orthodoxy" or "best practices"

10  are not "actionable misrepresentations."  (1/16/2013 Order at 61.)  In its January 13,

11  2012 Order dismissing Plaintiff's CAC, this Court held:

12      The allegedly false statements are couched in aspirational
13      terms.   The repeated use of words like "pursuing,"
        "looking to build," "going to be" and "committed to"
14      indicates that the company was articulating goals it was
15      ***trying*** to meet, not making factual statements about the
        current status of its financial compliance and accounting
16      records.

17  (1/13/2012 Order at 45 (emphasis added).)  In its most recent Order, the Court

18  reaffirmed its holding, finding that Mr. Charney's "vague, forward-looking,

19  aspirational statements do not constitute actionable misrepresentations."[11]

20  (1/16/2013 Order at 61.)  Plaintiff's claim fails for this reason alone.

21    Further, even if Mr. Charney's statements were somehow actionable,

22  ───────────────

23  [10] Insofar as Plaintiff attempts to rely on Mr. Charney's and Mr. Kowalewski's
    2008 statements to establish scienter, this Court has already rejected that argument.
    (*See* 1/13/2012 Order at 58.)
24  [11] Even when the Court found that Deloitte's resignation raises questions, it did not
    backtrack from its finding that Charney's alleged misstatements are not actionable.
25  (*See* 1/16/2013 Order at 64) ("The question is whether, ***assuming*** defendants'
    statements concerning their desire to maintain a strict financial orthodoxy and
26  appropriate internal controls are actionable misrepresentations, Deloitte's
    resignation and statements concerning the reliability of the information it had
27  received from the company, coupled with other allegations that are insufficient on
    their own, give rise to a strong inference that the representations were made with
28  scienter.") (emphasis added).

      THE INDIVIDUAL DEFENDANTS' MOTION TO
      DISMISS SECOND AMENDED COMPLAINT

1  Plaintiff has not pleaded facts that show that Mr. Charney or Mr. Kowalewski knew

2  that they were false.  Indeed, this Court found only Plaintiff's allegations about

3  Deloitte's resignation possibly relevant to scienter.[12]  (1/16/2013 Order at 62.)  And

4  with regard to Deloitte, the Court provided detailed guidance on what Plaintiff must

5  plead to establish scienter: (1) "allegations detailing the inaccuracies in the financial

6  statements," (2) "the types of information defendants purportedly withheld," and

7  (3) "the knowledge or participation of individual defendants in the decision to

8  withhold the information."  (1/16/2013 Order at 65.)  Plaintiff's SAC contains none

9  of these facts.

10       First, while Plaintiff continues to contend that the Company's 2009 10-K

11  contains misstatements, Plaintiff again fails to specify the exact alleged

12  inaccuracies.  Deloitte itself has never taken the position that the 2009 10-K is

13  erroneous; because of its disagreements with management, Deloitte stated only that

14  it was "no longer willing to rely on management's representations," and, thus, it

15  believes that its "[audit] report on the Company's previously issued consolidated

16  financial statements as of and for the year ended December 31, 2009" "should not

17  be relied upon."  (*See* SAC ¶ 218.)  That does not mean that Deloitte found

18  misstatements in the Company's 2009 10-K, only that Deloitte was no longer

19  willing to stand behind its own report given its dispute with management.

20  Management strongly disagreed with Deloitte's assessment that management

21  _____

22  [12] In its January 16, 2013 Order, the Court summarily dismissed Plaintiff's other
    allegations.  With regard to Plaintiff's allegations about "Charney's conflicts with

23  Marcum during conference calls," the Court found fatal that Plaintiff did not allege
    whether "Charney succeed[ed] in persuading Marcum to write off expenses in

24  violation of GAAP."  (1/16/2013 Order at 61.)  Plaintiff's SAC does not address
    this concern.  As to Plaintiff's allegations about Mr. Kowalewski's December 24,

25  2008 email in which he states that the Company "almost went bankrupt last
    Friday," the Court found Plaintiff's reliance on CW1 misguided because "the

26  complaint pleads no information concerning his/her job responsibilities, no facts
    suggesting that he/she was in a position to know about the company's overall

27  financial condition, nor any information as to why he/she thought the company was
    on the verge of bankruptcy in late 2008."  (*Id.* at 62.)  Plaintiff's vague addition that

28  CW1 was "running the online store . . . and wholesale accounts" (SAC ¶ 60) does
    not remedy these deficiencies.

1   withheld information that would have affected the Company's projections (Posner

2   Dec.[13] Exh.4, (Docket No. 115-2) at 17), and, in the years since the Company

3   changed auditors, it has not had to revise its 2009 financials.  As for Plaintiff's

4   insinuation that but for management allegedly withholding from Deloitte the

5   Company's "February 2010 monthly information," Deloitte would have insisted

6   that the 2009 10-K contain a "going-concern" qualification, this is pure speculation.

7   Plaintiff admits as much, stating only that "Deloitte ***may have needed*** to impose a

8   'going concern' qualification in its audit report for the Company's 2009 Annual

9   Report."  (SAC ¶ 35 (emphasis added).)  Deloitte has itself never made this claim.

10   While Plaintiff provides a detailed explanation of GAAS rules (*id.* ¶¶ 209-211,

11   213), it is unclear what the rules would have required because Plaintiff never

12   alleges what the "February 2010 monthly information" purportedly showed.

13          Second, Plaintiff again fails to plead exactly what information the Company

14   purportedly withheld.  In the FAC, Plaintiff alleged only that the Company

15   withheld from Deloitte "the February 2010 monthly financial statements."  (*See,*

16   *e.g.*, FAC ¶ 51.)  Despite this Court already having found this insufficient,

17   Plaintiff's SAC contains nothing beyond the same vague and conclusory

18   allegations.  (*See* SAC ¶¶ 209, 211, 215, 216, 218) (repleading merely that

19   Company withheld from Deloitte its "February 2010 financial statements" and

20   "February 2010 monthly financial results").)[14]

21          Third, Plaintiff again provides no details showing that Mr. Charney or Mr.

22   Kowalewski knew of or participated in the alleged withholding of information from

23   _____

[13] "Posner Dec." refers to the Declaration of Harriet S. Posner in Support of
24   Defendant American Apparel, Inc.'s Motion to Dismiss First Amended Class
     Action Complaint and attached Exhibits (Docket Nos. 115-1, 115-2), filed
25   concurrently with American Apparel's Motion (Docket No. 114) and American
     Apparel's Request for Judicial Notice in Support of Defendant American Apparel,
26   Inc.'s Motion to Dismiss First Amended Class Action Complaint on March 30,
     2011 (Docket No. 115).  The Court has taken judicial notice of the Exhibits
27   attached to the Posner Dec.  (1/16/13 Order at 22.)
[14] In some instances, Plaintiff's characterization was even more vague, claiming that
28   the Company withheld "negative financial information" and "numerous monthly
     reports."  (SAC ¶¶ 31, 214.)

1   Deloitte.  In his SAC, Plaintiff repeatedly contends that "Defendants" withheld

2   financial information from Deloitte.  (*See, e.g.*, SAC ¶ 218 (alleging that

3   "Defendants had knowingly concealed material adverse financial information").)

4   The SAC does not allege, however, that Mr. Charney or Mr. Kowalewski

5   specifically withheld the information, or that Mr. Charney or Mr. Kowalewski

6   knew that information was withheld.[15]  The only allegation that purports to show

7   them in possession of this information was a statement by CW8, who claimed that

8   the Company's accounting department generated a "daily accounting report" that

9   was allegedly circulated to Mr. Charney and Mr. Kowalewski.  (SAC ¶ 214.)

10  While Plaintiff contends that the report, along with a daily sales report that Mr.

11  Charney and Mr. Kowalewski also allegedly received, had "the very financial

12  information that Deloitte said it had requested" (*id.*), Plaintiff provides no basis for

13  this assertion.  The SAC fails to specify what information was contained in the

14  reports, how CW8 (a "logistics manager") (*id.* ¶ 76) could attest to what the

15  accounting department generated, and how he or she knew what Deloitte requested.

16        **D.    Plaintiff's new allegations that Charney and Kowalewski**

17        **concealed the Company's breach of its debt covenant do not**

18        **support a federal securities claim.**

19        Plaintiff's new allegations claiming that the Company concealed a breach of

20

---

21  [15] To establish that Mr. Charney and Mr. Kowalewski were aware that information
    was withheld from Deloitte, Plaintiff cites a GAAS rule to show that "Deloitte
22  would have required written representations from management that Deloitte
    possessed all relevant, material information prior to issuing its audit report."  (SAC
23  ¶ 213.)  The rule itself, however, states only that a letter "should" be provided, and
    that the signatories "***normally*** include the chief executive officer and chief financial
24  officer.  (*Id.* (emphasis added).)  The SAC provides no details as to whether a letter
    was ever provided in this case and, even if it was, what the letter stated and whether
25  Mr. Charney or Mr. Kowalewski signed it.  Thus, even in the light most favorable
    to Plaintiff, all this allegation shows is what Mr. Charney or Mr. Kowalewski
26  should have known, which does not come close to establishing scienter.  *In re A-
    Power Energy Generation Sys. Sec. Litig.*, MDL 11-2302-GW (CWx), 2012 U.S.
27  Dist. LEXIS 79417, at **34-36, 2012 WL 1983341, at *10 (C.D. Cal. May 31,
    2012) (holding allegations that an individual defendant "should have been aware"
28  of certain information speaks to negligence or gross negligence, but "does not
    amount to stating a claim for securities fraud").

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1   its debt covenant with Lion Capital also fail to state a claim.  Plaintiff alleges for

2   the first time that Defendants had violated the debt covenant with Lion Capital.

3   (*See* SAC ¶¶ 196-198.)  According to Plaintiff, the Company's debt covenant with

4   Lion Capital prohibits the ratio between debt and EBITDA to exceed 2.00 for the

5   four quarters before March 31, 2010.  (SAC ¶ 198.)  Plaintiff contends that, in

6   violation of the debt covenant, the ratio actually amounted to 2.04, and that this was

7   not evident until the Company released its May 11, 2011 Form 8-K, which revealed

8   to the public for the first time the Company's 1Q10 EBITDA.  (*See id.*)

9        Plaintiff cannot plead loss causation for his new debt covenant theory.  To

10  recover under Section 10(b) of the Exchange Act, a plaintiff must plead loss

11  causation by alleging that the market reacted negatively to a corrective disclosure—

12  a revelation of the "truth"—that exposed the falsity of defendants' previous

13  statements.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-44, 125 S. Ct.

14  1627, 1631-32, 161 L. Ed. 2d 577, 585-86 (2005).  In *Dura*, the Supreme Court

15  made clear that securities fraud plaintiffs must allege a disclosure that actually

16  showed the defendants' prior statements were false, not just that the stock price was

17  inflated.  *See id.* at 344 ("[A] person who misrepresents the financial condition of a

18  corporation in order to sell its stock becomes liable to a relying purchaser for the

19  loss the purchaser sustains when the facts . . . become generally known and as a

20  result share value depreciates." (internal quotation marks omitted)).

21       Here, Plaintiff claims that the "truth" was revealed in the Company's May

22  11, 2011 Form 8-K, when the Company purportedly "publicly disclosed" its

23  EBITDA for 1Q10.  (*See* SAC ¶ 198.)  First, the alleged May 11, 2011 "disclosure"

24  falls almost a year and a half outside the class period.[16]  That alone is fatal to

25  Plaintiff's claim.  *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1266

26  (S.D. Cal. 2010) (finding that to begin to show proximate cause between correction

27  and its resulting loss within class period, plaintiffs must first "identif[y] . . . one or

28  _____

[16] The class period runs from November 28, 2007, to August 17, 2010.  (SAC ¶ 2.)

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1   more corrective disclosures *during* the class period") (emphasis added).  Second,

2   what the Company disclosed in the May 11, 2011 Form 8-K was an *adjusted*

3   EBITDA figure for 1Q10—not the *consolidated* EBITDA," which is the actual

4   figure used to calculate the ratio between debt and EBITDA under the Company's

5   credit agreement with Lion Capital.  (Compare Lion Capital RJN[17] Exh. J, Credit

6   Agreement at 6–7 (defining "Consolidated EBITDA") with Lion Capital RJN Exh.

7   D, American Apparel's 8-K for quarter ended June 30, 2009 at Table A (defining

8   "Adjusted EBITDA").)  Because nothing disclosed in the May 11, 2011 Form 8-K

9   was relevant to the Company's debt covenant—let alone showed that prior

10   statements about compliance with the Company's debt covenant were false—

11   Plaintiff has not sufficiently pleaded loss causation.

12        Plaintiff's new debt-covenant allegations also fail to state a claim because—

13   as with other alleged misstatements that this Court found to be "couched in

14   aspirational terms" and "simply too vague to be actionable" (1/16/2013 Order at

15   59)—many of the statements about complying with debt covenants are puffery.  For

16   example, Plaintiff claims that Mr. Charney and Mr. Kowalewski made the

17   following alleged misstatements:

18   • Mr. Charney's March 25, 2010 statement, "[s]o all smiles on my part . . . . I think we're going to be fine in this area,
19   in the area of covenants," and his April 2, 2010 statement, "I think we're going to have a great year." (SAC ¶¶ 190,
20   195.)

21   • The Company's 2009 10-K signed by Mr. Charney and Mr. Kowalewski, which stated that the Company
22   "anticipated" it would be in compliance "based on
23   information currently available."  (*Id.* ¶ 196.)

24

25   • The May 19, 2010 8-K signed by Mr. Kowalewski, which represented that the Company projected it was in
26   compliance with covenants "based on the preliminary

27

28   [17] "Lion Capital RJN" refers to the Defendant Lion Capital's Request for Judicial Notice.

21                            THE INDIVIDUAL DEFENDANTS' MOTION TO
                              DISMISS SECOND AMENDED COMPLAINT

1    financial results for the first quarter of 2010."[18]  (*Id.* ¶
2    197.)

3    These statements are not actionable, however, because they are classic examples of

4    puffery and "not capable of objective verification."  *In re Impac Mortg. Holdings,*

5    *Inc.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) ("In stating that he 'continue[d]

6    to expect solid loan acquisitions and originations,' Defendant Tomkinson was

7    making a forward-looking statement of optimism regarding loan production.

8    Because such a statement is not capable of objective verification, it is properly

9    characterized as a statement of 'mere puffing.'").

10       Further, to the extent Plaintiff is attempting to recover on the basis of the

11   Company's August 17, 2010 10-Q, which stated that, "[a]s of March 31, 2010, the

12   Company was in compliance with all required covenants of . . . the Lion Credit

13   Agreement," Plaintiff's position is not colorable.  (SAC ¶ 199.)  On that same day,

14   the Company issued a press release on Form 8-K notifying investors that "the

15   Company may not have sufficient liquidity necessary to sustain operations for the

16   next twelve months," and that there was "substantial doubt that the Company will

17   be able to continue as a going concern."  (SAC ¶ 204; Cheng Dec.[19] Exh. A,

18

19   [18] The forward-looking statements in the 2009 10-K and the May 19, 2010 8-K also
     qualify for protection under the Reform Act's safe harbor.  15 U.S.C. §§ 77z-2(c),
20   78u-5(c).  The statements were accompanied by explicit cautionary language.
     (Jones Dec. Exh. 20, (Docket No. 74-4) at 102-03; *id.* Exh. 21, (Docket No. 74-4)
21   at 122; *see also* Appendix to Defendants Charney and Kowalewski's Motion to
     Dismiss First Amended Class Action Complaint (Docket No. 110).)  Further, in
22   addition to making clear the preliminary nature of its assessments, the Company
     explicitly warned investors that it could very well default on its debt covenants.
23   Indeed, on May 19, 2010, when Plaintiff alleges that Defendants misled investors
     about complying with all debt covenants, the Company in the same paragraph
24   alerted investors that "based on the company's preliminary financial results for the
     first quarter ended March 31, 2010, and based on existing trends, the company
25   anticipates that it will not be in compliance with the Total Debt to Adjusted
     EBITDA covenant under its credit agreement with its second lien lender at June 30,
26   2010."  (Jones Dec. Exh. 21, (Docket No. 74-4) at 122.)
     [19] "Cheng Dec." refers to the Declaration of Jennifer H. Cheng in Support of
27   Defendants Charney and Kowalewski's Motion to Dismiss First Amended Class
     Action Complaint (Docket No. 110-1), filed March 30, 2012 with Defendants
28   Charney and Kowalewski's Request for Judicial Notice in Support of Defendants
     Charney and Kowalewski's Motion to Dismiss First Amended Complaint (Docket

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1   (Docket No. 110-1) at 8.)  Given that the Company already revealed that it was

2   experiencing financial issues that threatened its very existence, the Company had

3   no incentive to purposely misrepresent whether it complied with its debt covenants.

4          Finally, even assuming Mr. Charney's and Mr. Kowalewski's debt-covenant

5   statements are actionable, Plaintiff fails to allege facts to show that, at the time Mr.

6   Charney and Mr. Kowalewski made the statements at issue, they knew that the

7   Company's 1Q2010 EBITDA would cause a breach of its debt covenant with Lion

8   Capital.  Instead, Plaintiff relies on conclusory allegations that Mr. Charney and

9   Mr. Kowalewski had access to information, which alone does not establish a strong

10  inference of scienter.  *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d

11  1096, 1121 (C.D. Cal. 2012) (holding that conclusory allegations do nothing to

12  contribute to a strong inference of scienter); *see In re Century Aluminum Co. Sec.

13  Litig.*, 749 F. Supp. 2d 964, 973 (N.D. Cal. 2010) ("[B]are allegations that . . .

14  officers had access to financial statements and analyzed those statements do[] not

15  support the inference that defendants knew about the accounting error.").  For

16  example, Plaintiff attempts to establish scienter on the basis that the Company was

17  allegedly "required to provide Lion Capital, within 30 days of the end of each fiscal

18  month, with 'a certificate of a Financial Officer . . . (i) certifying as to whether a

19  Default or Event of Default has occurred . . . [and] (ii) setting forth reasonably

20  detailed calculations with respect to the covenant[ ]."  (SAC ¶ 200.)  Plaintiff does

21  not allege, however, facts showing that the certifications and the accompanying

22  calculations contained information that somehow placed Mr. Charney and Mr.

23  Kowalewski on notice that the Company had breached the debt covenants.[20]

24

25  No. 111).  The Court has taken judicial notice of the Exhibits attached to the Cheng
    Dec.  (1/16/13 Order at 22.)

26  [20] Similarly, Plaintiff's claim Defendants "knew that American Apparel had
    breached its debt covenants because the closing process for American Apparel's

27  monthly financial statements occurred within the first two to three weeks of the end
    of each month."  (SAC ¶ 200.)  But Plaintiff never alleges what exactly this

28  information is, and whether this information even included actual EBITDA.
    Plaintiff also alleges that "[t]he Individual Defendants also closely monitored and

23

## IV.   THIS COURT SHOULD DISMISS PLAINTIFF'S SECTION 20(A) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

This Court should also dismiss Plaintiff's second cause of action alleging control liability against Mr. Charney and Mr. Kowalewski.  To establish liability under Section 20(a), Plaintiff must show (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator's acts constituting the violation.  *See* 15 U.S.C. §78t(a), *Lipton*, 284 F.3d at 1035 n. 15 ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5.") (citing *In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993)).  Thus, to the extent that there is no "primary violation," Plaintiff cannot proceed under Section 20(a).  And to the extent that this Court finds that Plaintiff has adequately pleaded a primary violation on the basis of the Company's statements about immigration compliance, Plaintiff also cannot proceed under Section 20(a) because there is no allegation that the Mr. Charney or Mr. Kowalewski exercised "actual power or control" over the alleged immigration violations.

## V.   CONCLUSION

The original complaint in this action was filed in 2010.  The CAC was filed in 2011.  The FAC was filed in 2012.  Now, in 2013, Plaintiff has filed the SAC— his fourth attempt to state a claim against Mr. Charney and Mr. Kowalewski.  In twice dismissing Plaintiff's complaint against Mr. Charney and Mr. Kowalewski, this Court has twice provided Plaintiff with a roadmap to a sufficiently pleaded complaint.  The Court has challenged Plaintiff to provide particularized, concrete facts that establish what Mr. Charney and Mr. Kowalewski knew and when they knew it.  That their tenures at American Apparel coincided with a period of lax

---

managed the Company's debt covenants to avoid any breach, calculating them on a monthly basis."  (*Id.* ¶ 201.)  But the SAC provides no allegations that substantiate this conclusory claim, including, for example, how the Individual Defendants allegedly "monitored and managed" the debt covenant and what exact information they purportedly knew as a result.

THE INDIVIDUAL DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1  immigration compliance at the Company is not enough to plead a Section 10(b)

2  violation against them as Individual Defendants.  Nothing in the SAC changes that

3  calculus.

4

5      Dated:      March 15, 2013          O'MELVENY & MYERS LLP

6                                          By:  /s/ Seth Aronson

7                                               Seth Aronson

8                                          Attorneys for Defendants Dov Charney
                                           and Adrian Kowalewski

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28